# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7262 | **DATE** | 12/6/2004 |
| **CASE TITLE** | McKinney vs. Nationscredit Financial | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion for summary judgment (43-1) and denies plaintiffs' motion for summary judgment (46-1). It appears to the Court that the claims of one plaintiff, Deborah Fentress, may still be pending. The case is set for a status hearing on 12/13/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 07 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | GrA | 59 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL MCKINNEY and<br>PHYLLIS MCKINNEY,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSCREDIT FINANCIAL SERVICES<br>CORPORATION, doing business as<br>EQUICREDIT CORPORATION OF<br>ILLINOIS; EQUICREDIT CORPORATION<br>OF MISSOURI; EQUICREDIT<br>CORPORATION OF AMERICA;<br>FAIRBANKS CAPITAL CORPORATION;<br>and BANK OF NEW YORK,<br><br>Defendants. | Case No. 02 C 7262<br><br>**DOCKETED**<br>DEC 0 7 2004 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Phyllis and Darryl McKinney have sued their mortgage lender, its assignees, and the loan servicer claiming that the defendants deprived them of their rescission rights in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226, and the Illinois Consumer Fraud Act by allegedly requiring them to sign both a Notice of Right to Cancel form and a Confirmation of noncancellation form at the closing of their mortgage loan.[1] Plaintiffs sue to rescind the mortgage loan and to obtain statutory damages, attorneys' fees, and costs. This case is before the Court on both defendants'

---

[1] The *McWethy* class allegations were dismissed by agreement on November 17, 2003.

1

and plaintiffs' motions for summary judgment. Because the Court finds that plaintiffs have not presented evidence sufficient for a reasonable jury to conclude that they signed the Confirmation at the closing, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion.

## Facts

The McKinneys obtained a $326,700 non-purchase-money mortgage loan from Equicredit Corporation of Illinois ("Equicredit of Illinois") on April 23, 2001. Equicredit of Illinois no longer exists, but its successor by merger is defendant Nationscredit Financial Services Corporation ("Nationscredit"). Defendant Fairbanks Capital Corporation is the servicer of the McKinneys' note and mortgage, and defendant Bank of New York holds title as assignee of the McKinneys' loan. It appears from plaintiffs' response memorandum that they have voluntarily dismissed Equicredit Corporation of America as a defendant. *See* Pl's Resp. at 12-13.

It appears undisputed that the closing took place at the McKinneys' home; however, neither side can with certainty identify the closing agent. The McKinneys believe the evidence shows "that most certainly Shannon Haring performed the McKinneys closing." Pl's 56.1 Resp. at ¶ 17. As support, they point out that in April 2001 when the closing occurred, Haring was employed as a searcher and closing agent at Security First Title Company, Equicredit of Illinois' agent at the closing. Haring Dep. at 7. Haring testified that there was no way to determine who performed the closing from looking at the closing documents. *Id.* at 64. But Haring also acknowledged that she performed more closings in people's homes than any other closer at Security First during the eleven months she worked for the company, and she agreed that if McKinneys' closing was performed at their home, she was most likely the closing agent. *Id.* at

65. Nevertheless, Haring could not recall performing the McKinneys' closing. *Id.* at 61-62, 68.

The central dispute in the case concerns what documents the McKinneys signed at the closing. In their complaint, the McKinneys alleged that "upon information and belief," the closing agent simultaneously presented them with and required them to sign a form entitled "Notice of Right to Cancel" and a form entitled "Confirmation" that confirmed and warranted that they had not cancelled the transaction. Pl's Am. Compl. ¶ 38. It is undisputed that the McKinneys signed the Notice of Right to Cancel at the closing, which informed the McKinneys that they had a "legal right under federal law to cancel this transaction, without cost, within three business days." The Confirmation, which the McKinneys contend was on the opposite side of the sheet of paper containing the Notice of Right to Cancel, states:

> The undersigned, having been given due notice as required by Federal Law, hereby confirm(s), in all respects, a real mortgage loan made to him/her/them by Lender named on the reverse hereof on the date the notice on the reverse hereof was signed, warrants that more than 3 business days have elapsed since receipt of the "Notice of Right to Cancel" and further warrant(s) that the undersigned has/have not rescinded or cancelled said real estate mortgage loan transaction or given notice of rescission or cancellation of said transaction.

Def's 56.1 Stmt., Ex. A (exhibit to P. McKinney Dep.) (footnote omitted).

The McKinneys allege that they also signed the Confirmation at the closing. But although the McKinneys produced unsigned copies of both the Notice of Right to Cancel and the Confirmation, which they claim were given to them at the closing, neither side has been able to produce a Confirmation form signed by the McKinneys. The transmittal sheet that Security First Title Company used to record all documents that were returned to the lender in the closing package also did not list an executed Confirmation form. *See* Haring Dep. at 106-08. The McKinneys argue that because the Confirmation form was on the reverse side of the Notice, the

3

Title Company probably mistakenly failed to copy and record the Confirmation side of the document. The McKinneys further allege that it was Equicredit of Illinois' policy to require clients to sign both documents at the closing. Yet, as discussed below, neither Phyllis nor Darryl McKinney testified that they signed the Confirmation form at the closing.

McKinneys assert that by requiring them to sign at the closing a form stating that their three-day rescission period had passed and that they had not rescinded their loan, the defendants deprived them of their right to rescind in violation of TILA. According to the McKinneys, the defendants violated TILA a second time when they failed to honor the McKinneys' proper exercise of their extended right to rescind that resulted from the earlier infraction. The McKinneys claim they are entitled to rescind the loan under 15 U.S.C. § 1641(c) and obtain statutory damages for defendants' failure to rescind their loan under 15 U.S.C. § 1635(g). They also bring a claim under the Illinois Consumer Fraud Act, contending that all defendants, except Fairbanks, engaged in unfair and deceptive acts and practices that deprived them of their rescission rights under TILA.

## Discussion

### 1. Defendants' Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine whether a genuine issue of material fact exists, the Court views the record in the light most favorable to the McKinneys, the non-moving party in this instance, drawing reasonable

4

inferences in their favor. *Id.* at 322. Nonetheless, a party opposing summary judgment may not simply rest on the pleadings, but must instead affirmatively demonstrate that there is a genuine issue for trial. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003); *see also Davis v. GN Mortgage Corp.*, 244 F. Supp. 2d 950, 955 (N.D. Ill. 2003) ("A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence."). Thus, the McKinneys must produce specific facts to support their contentions rather than relying on speculation and conclusions without factual support. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). When the defendant moves for summary judgment based on the lack of proof of a material fact, the Court must ask whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Anderson v. Liberty, Inc.*, 477 U.S. 242, 249 (1986).

The McKinneys first contend that the defendants interfered with their right to rescind and violated TILA's "clear and conspicuous" notice requirement by presenting and requiring them to sign both a Notice of Right to Cancel and a Confirmation of noncancellation at the closing. Under TILA, a debtor "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . whichever is later." 15 U.S.C. § 1635(a). A debtor must receive notice of her right to rescind "on a separate document that identifies the transaction and . . . clearly and conspicuously disclose[s]" the debtor's rights. 12 C.F.R. § 226.23(a)(3). A creditor who fails to comply with these requirements may face civil liability under TILA, 15 U.S.C. § 1640(a), and the debtor's right to rescind is extended up to three years after the transaction. 12 C.F.R. § 226.23(a)(3).

The McKinneys' TILA claim is based entirely on their allegation that the closing agent

5

simultaneously required them to sign both forms during the closing. But they have provided no evidence that they actually signed the Confirmation form at the closing. Neither side has been able to produce a signed copy of the Confirmation form, and the transmittal document used by the Title Company does not indicate that an executed Confirmation form was sent to the lender. Even if the closing agent gave McKinneys an unsigned version of the Confirmation at the closing, this would not have been inconsistent with Equicredit's stated policy to have the closing agent wait until the three days expired and then have the customer sign the Confirmation form and fax or mail the signed sheet to the office. *See* Dodd Dep. at 105-06.

Neither Darryl or Phyllis McKinney actually testified that they signed the Confirmation form at their closing. When presented with a copy of the Confirmation form during her deposition, Phyllis testified that she did not recall receiving or signing the document at the closing. P. McKinney Dep. at 63-64. Though Darryl testified that the closer asked them to sign the "cancellation form" at the closing to save her a trip back to Chicago, he later corrected himself and admitted that he was referring to the Notice of Right to Cancel. D. McKinney Dep. at 80. At one point he described a document that sounds similar to the Confirmation form, *id.* at 81, but he later clarified that he was referring to the Notice of Right to Cancel form, *id.* at 82. In addition, when shown the Confirmation at his deposition, Darryl stated that he did not know if the document was presented to him at the closing. *Id.* at 84. And when asked to review the entire file of closing documents produced by the plaintiffs during discovery, including a Confirmation form, and asked to select the document he said the closer asked him to sign, Darryl stated, "No, the only thing I see in here is the notice of right to cancel." *Id.* at 85.

Plaintiffs argue that Darryl was confusing the forms. His testimony, however, was more

consistent with the idea that he was confused about the meaning of the forms. With the Notice of Right to Cancel in front of him, Darryl stated, "I thought your notice of right to cancel was a form you received during a closing that allowed you to have 72 hours to reconsider your loan. . . . [a]nd that it shouldn't be signed until three days later." *Id.* at 82-83. Plaintiffs could have also used the deposition to clear up any supposed confusion but elected not to do so.

The McKinneys' vague and uncertain testimony surrounding the key element of their claim is insufficient to show that a genuine issue of material fact exists.[2] Had the McKinneys actually testified that they signed the Confirmation at their closing, the Court would be required to deny defendants' motion for summary judgment. But they did not so testify.

The McKinneys next attempt to bolster their position by arguing that Equicredit of Illinois had a policy of requiring clients to sign both the Notice of Right to Cancel and Confirmation at the closing, thus raising an inference that they were required to sign both documents at their own closing. This argument, however, is not supported by the record.

The McKinneys argue that it was Haring's practice to present the Confirmation for signature with the Notice of Right to Cancel at the closing. This exaggerates Haring's testimony. In fact, she indicated only that there were instances in which she presented both documents at the closing. Haring Dep. at 100-01. To draw from this the conclusion the McKinneys represented one such instance, particularly when there is no evidence that Haring was even the McKinneys'

---

[2] It also has not escaped the Court's attention that prior to filing this lawsuit, the McKinneys received an unsolicited letter from plaintiffs' counsel alerting them that they might be entitled to benefits as high as $20,000 to $60,000 if they signed "a 'confirmation' representing that they would not cancel their loans at the same time as they were given the required notice of the right to cancel." Def's Ex. M. Upon receiving the letter, Phyllis testified that her husband wanted to be part of the lawsuit, remarking, "[S]ounds like why not; if it's true, it's true. If it's not, it's not. Why not do it." Phyllis Dep. at 59-60. Though the Court has not factored this letter into its analysis, it does note with some irony that Darryl claims that he was asked to sign some form that deprived him of his right to rescind, yet was unable to recognize the actual Confirmation form.

7

closing agent, is not a reasonable inference; it is a leap of faith.

The McKinneys likewise allege that Equicredit intended both forms to be signed together at the closing. As evidence of this, they point to James Dodd's testimony that the Notice of Right to Cancel and Confirmation documents were both sent as part of the closing package to closing agents in 2001 and that the documents appeared on opposite sides of a single page. Dodd Dep. at 60. Dodd, Assistant General Counsel in the Bank of America Legal Department, drafted Equicredit's standard Letter of Closing Instructions. *See* Pl's Mem. at 14, ¶ 45.

In addition, the McKinneys maintain that Equicredit of Illinois' Letter of Closing Instructions and internal and external documents show that it intended the signed confirmation to be returned within one day of the closing. Though the Closing Instructions indicate that the "Notice to Customer/Confirmation" should be "returned within one working day after closing," Pl's Ex. K, § 6.1, as Dodd stated in his deposition, the instructions do not specifically instruct the closing agent to have the client sign the confirmation upon disbursement. Dodd Dep. at 83-84. Dodd further testified that the instructions are designed to be utilized by someone who is knowledgeable with the federal regulations and that it would be apparent from reading the Confirmation that it would be inappropriate to have it signed at the closing. *Id.* at 84. Furthermore, Equicredit produced a checklist that it purportedly distributed to closing agents, to be used along with the closing instructions, that directed agents to retain the Confirmation until the three-day rescission period had passed and to have the customer sign it on the day of funding before mailing it to the office. Def's 56.1 Resp., Ex. B; Dodd Dep. at 105-06. Dodd testified that this instruction reflected Equicredit's policy with respect to the Confirmation form. *Id.* Finally, the Court finds that Equicredit's internal and external communications produced by the

McKinneys do not provide any additional evidence that it was the practice of the company to require clients to *sign* the Confirmation form at the closing. *See* Pl's Ex. R; Pl's 56.1 at ¶¶ 56-58.

In sum, the McKinneys have presented insufficient evidence to support a reasonable inference that they signed the Confirmation form at their closing. See *Rand*, 42 F.3d at 1146 ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors."). Without such evidence, the McKinneys cannot succeed on their TILA claim. Because the McKinneys cannot show that a genuine issue of material fact exists as to an essential component of their claim, they are not entitled to rescission or other relief on their TILA claim, and the Court must grant defendants' motion for summary judgment. *See Celotex*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Thus, the Court need not address the parties' remaining arguments. Because the McKinneys' Illinois Consumer Fraud Act Count alleges wrongdoing by defendants only to the extent that they violated McKinneys' rescission rights under TILA, *see* Pl's Am. Compl. at 11, summary judgment is appropriate as to Count 2 as well.

### 2. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment as to the liability of all defendants under TILA and the implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226. For the reasons discussed above, the Court denies the McKinneys' motion.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [docket no. 43] and denies plaintiffs' motion for summary judgment [docket no. 46]. It appears to the Court that the claims of one plaintiff, Deborah Fentress, may still be pending. The case is set for a status hearing on December 13, 2004 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date: December 6, 2004